PAUL O. BUCKLEY *v.* MARGOT F. WEBB

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued February 7—decided April 10, 1956

*Samuel Reich,* with whom, on the brief, was *Robert A. Epstein,* for the appellant (plaintiff).

*Samuel E. Friedman,* with whom was *Arthur Levy, Jr.,* for the appellee (defendant).

DALY, J. In his complaint, the plaintiff alleged that he is the owner of an undivided one-half interest in, and is in possession of, a parcel of land in the town of Newtown; that he acquired title to his interest by a deed dated November 22, 1947; and that the defendant is the owner of the other one-half interest but claims sole ownership adverse to the plaintiff's title and ownership. He prayed a judgment determining the rights in or to the land and settling the title. The defendant, in and by her answer, claimed the entire fee, alleging that she obtained it by a deed dated April 18, 1945, which was recorded in the Newtown land records on May 15, 1952. The court, by its judgment, found the issues for the defendant, that she had an absolute title to the land in fee simple as against the plaintiff and that he had no estate or interest in the land. The plaintiff has appealed.

The unchallenged material facts which were found are the following: The plaintiff and the defendant were married on October 12, 1941. On December 23, 1941, the plaintiff purchased, for their home, premises in Newtown and assumed the payment of a $15,000 mortgage thereon, held by Helen E. Woodworth. He desired to give the defendant a one-half interest in the property and instructed his New York attorney to prepare a deed which would convey such an interest to her. The attorney prepared an instrument which he believed would carry out the plaintiff's instructions, and on March 15, 1943, the plaintiff executed it. It purported to be a warranty deed conveying title to the premises from him to himself and the defendant as tenants by the entirety. The deed was recorded on March 15, 1943, in the Newtown land records.

In March or April of 1945, the parties separated,

and thereafter each of them desired a reconciliation. The defendant told the plaintiff that she would resume living with him if he would provide her with some security. As part of the security, she requested sole ownership of the property in question, to be occupied by them as a home. The plaintiff agreed and instructed his attorney to prepare the necessary documents. On April 18, 1945, pursuant to the reconciliation agreement, the parties executed an instrument purporting to be a warranty deed conveying title to the premises from the plaintiff and the defendant to the defendant. The conveyance by the plaintiff to the defendant was unconditional and was intended by him to vest complete ownership of the property in her. On the plaintiff's instructions, his attorney delivered the deed to the defendant's attorney. At the time of delivery of the deed, the plaintiff told the defendant that it would be a blow to his pride if she recorded it and that he did not want people in Newtown to know that the property was not his. The defendant, desirous of preserving her marriage, instructed her attorney to keep the deed for safekeeping.

In late 1946 or early 1947, payment of the indebtedness secured by the mortgage upon the property was requested of the plaintiff. He informed the defendant of the request and she said that she would prefer to pay off the mortgage and have the property free and clear. The plaintiff, however, told her that she knew nothing of business and that it was advantageous to have a mortgage on the property. He consulted Attorney John F. Holian of Newtown to learn whether any local bank would be interested in making a loan upon the security of a mortgage which would replace the existing one. After communicating with the local banks, Holian

informed the plaintiff that the City National Bank and Trust Company of Danbury would be interested in such a mortgage. The defendant was consulted and consented to the making of a mortgage to it. The plaintiff instructed Holian to prepare whatever papers would be required by the bank and authorized him to search the title of the property as requested by it. The defendant consented and agreed to have Holian act as her attorney in making any arrangements that might be necessary to obtain a mortgage from the bank. Holian made a search of the title. It revealed that the last recorded instrument affecting the title to the property was the deed dated March 15, 1943, which purported to create a tenancy by the entirety in the plaintiff and the defendant. In Holian's opinion that deed did not effectively create a joint estate in the plaintiff and the defendant because (1) a tenancy by the entirety is not recognized in this state and (2) the plaintiff deeded the property to himself. To carry out the recorded intent of the deed dated March 15, 1943, namely, that the defendant and the plaintiff would each have an undivided one-half interest in the property with survivorship, Holian prepared a quitclaim deed to Priscilla Carmody to be executed by the plaintiff and the defendant, and a quitclaim deed to the parties, with survivorship, to be executed by Priscilla Carmody. He also prepared a mortgage deed to be executed by the parties as mortgagors to the bank as mortgagee.

On November 22, 1947, Holian brought to the home of the parties the two quitclaim deeds and the mortgage deed. He explained to the plaintiff and the defendant that they were to execute a quitclaim deed to Priscilla Carmody, his secretary, and that she, in return, would quitclaim the property

to them, thereby setting up a joint estate with survivorship. The defendant was informed and understood that one of the objects to be attained by the execution of the quitclaim deeds was to correct the deed dated March 15, 1943, so as to create a valid joint estate with survivorship in order that a valid mortgage acceptable to Holian and the mortgagee could be executed. The parties then executed the quitclaim deed in which Priscilla Carmody was named as grantee, and she executed the other one, in which she quitclaimed to them and the survivor of them all her right, title and interest in the premises. The Woodworth mortgage, which the plaintiff had assumed, was released, and the parties executed the mortgage to the bank. The instruments executed on November 22, 1947, were recorded in the Newtown land records on that day. The wording in each of the quitclaim deeds dated November 22, 1947, is clear and unambiguous. The defendant did not, on November 22, 1947, prior thereto or immediately thereafter, tell Holian or any other person that she had the deed which had been executed on April 18, 1945, or that she claimed to be the sole owner of the premises. She allowed the land records to continue to show that the property was jointly owned by the plaintiff and herself until May 15, 1952, when she caused the deed executed on April 18, 1945, to be recorded. The plaintiff did not learn that the 1945 deed was still in existence until a date in May, 1952, when the defendant told him that she had recorded it on May 15, 1952.

The court also found, contrary to and inconsistent with findings recited above, the following: The defendant was not informed by anybody that she was signing a quitclaim deed on November 22, 1947. She was unaware that she was doing so. She

was not apprised that the other quitclaim deed was being executed by Priscilla Carmody and recorded, and she did not authorize the preparation and execution of such a deed. She did not know and was not advised that the execution of the quitclaim deeds would, in any way, alter her ownership of the property. Neither the plaintiff nor the defendant intended that any right, title or interest in the property should be conveyed by either of the quitclaim deeds executed on November 22, 1947. The plaintiff telephoned the defendant on the morning of May 15, 1952, and told her to have her warranty deed recorded. The court's conclusions were based, at least in part, on these findings.

The simple issue, as the parties concede, is whether the quitclaim deed executed by them on November 22, 1947, took from the defendant the title which she had acquired by virtue of the deed of April 18, 1945. In executing the 1947 quitclaim deed, she actually divested herself of all of the right, title and interest she then had in the property unless, because of some equitable reason, it should be held otherwise. She claims that she executed it through mistake. She and the plaintiff executed the identical instrument they intended to execute. The court did not find that she was induced to execute it through fraud or duress; instead, it found that she was informed and understood that one of the objects to be attained was to create a valid joint estate with survivorship in order that a valid mortgage acceptable to Holian and the mortgagee could be executed. Hence there was no mistake, and equity cannot ignore the 1947 quitclaim deed. The court could not reasonably or logically have found that title did not leave the defendant by virtue of it.

The findings that neither the plaintiff nor the

defendant intended that any right, title or interest in the property should be conveyed by either of the quitclaim deeds of November 22, 1947, are such that they might, as claimed by the plaintiff, properly constitute conclusions, because they might have been reached in whole or in part by deductions from other facts. *Horowitz* v. *F. E. Spencer Co.*, 132 Conn. 373, 377, 44 A.2d 702. "A deduction from other facts found, whether or not it is called a conclusion, and in whatever part of the finding it is placed, is a conclusion." *Wambeck* v. *Lovetri*, 141 Conn. 558, 561, 107 A.2d 395. In so far as relevant facts are found, these conclusions must be tested to see whether they are legally or logically consistent with those facts. *Horowitz* v. *F. E. Spencer Co.*, supra. This court may intervene when conclusions of the trier are unreasonable or illogical or are contrary to or inconsistent with relevant facts found. *Jack Torosian, Inc.* v. *Guastamachio*, 139 Conn. 754, 757, 97 A.2d 116; *Missionary Society* v. *Coutu*, 134 Conn. 576, 584, 59 A.2d 732; *Calway* v. *Williamson*, 130 Conn. 575, 581, 36 A.2d 377; *Hayward* v. *Plant*, 98 Conn. 374, 381, 119 A. 341. As there are inconsistencies in the findings, and the conclusions reached by the trial court are unreasonable, illogical and contrary to and inconsistent with relevant facts found, it is impossible for us to sustain the judgment.

The result reached by us makes it unnecessary to discuss the other assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.