STATE OF CONNECTICUT *v.* JAMES L. COBBS

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and BOGDANSKI, Js.

Argued December 5, 1972—decided March 7, 1973

*Bernard Green,* special public defender, for the appellant (defendant).

*Donald A. Browne,* assistant state's attorney, with whom, on the brief, was *Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant, James L. Cobbs, was indicted by a grand jury for the crime of murder in the first degree in violation of § 53-9 of the General Statutes. A jury returned a verdict of guilty of murder in the first degree. After a hearing in accordance with the provisions of § 53-10, the jury recommended a sentence of life imprisonment which the court imposed. The defendant appealed, assigning error in the overruling of his plea in abatement, his motion to quash and his challenge to the array of veniremen. The defendant also attacked the disqualification of jurors opposed to the death penalty, the admission into evidence of statements made by him to a police officer, the charge to the jury, and the overruling of his motion to set aside the verdict.

After indictment and prior to trial, the defendant filed a plea in abatement and motion to quash the indictment on four grounds. The plea in abatement was overruled and the motion to quash was denied. A finding of facts was made by the court (*Johnson, J.*) on the issues presented by these pretrial pleadings.[1]

The defendant claimed in his plea in abatement that the bench warrant issued by the Superior Court

---

[1] The defendant attacks two paragraphs in this finding as found without evidence. These two paragraphs constitute conclusions; see *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121, 318 A.2d 84, *Buckley* v. *Webb,* 143 Conn. 309, 315, 122 A.2d 220; and, viewed as conclusions, they are consistent with the facts found.

for his arrest on a charge of murder in the first degree was invalid because he was already being held to answer to the same charge in the Circuit Court.

A bench warrant was issued by the Superior Court while the defendant was being held pursuant to a Circuit Court warrant for the same offense. In *State* v. *Stallings,* 154 Conn. 272, 276–79, 224 A.2d 718, it was clearly stated that one accused of a felony or murder has no statutory right to a hearing in probable cause. See also *State* v. *Vennard,* 159 Conn. 385, 388, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625; *State* v. *Purvis,* 157 Conn. 198, 205, 251 A.2d 178. The defendant urges reconsideration of this court's previous holdings in view of *Coleman* v. *Alabama,* 399 U.S. 1, 10, 90 S. Ct. 1999, 26 L. Ed. 2d 387, which held that a hearing in probable cause is a "critical stage" in criminal proceedings. The *Coleman* case held that a preliminary hearing such as the state's hearing in probable cause was a "critical stage" in the proceedings which required the presence of counsel. The preliminary hearing, while it is a "critical stage" in a criminal proceeding, is not a required procedure which must be afforded every accused. The opinion in *Coleman* recognized the optional nature of the preliminary hearing. "The preliminary hearing is not a required step in an Alabama prosecution. The prosecutor may seek an indictment directly from the grand jury without a preliminary hearing." Id., 8. The following cases, decided since the *Coleman* case, have reinforced the holding in *State* v. *Stallings,* supra: *Hervey* v. *People,* 178 Colo. 38, 44, 495 P.2d 204 (March 27, 1972); *Chung* v. *Ogata,* 53 Haw. 364, 493 P.2d 1342 (February 25, 1972), rehearing denied, 53 Haw. 395,

495 P.2d 26 (March 20, 1972); *State* v. *Watson,* 193 N.W.2d 96 (Iowa, December 15, 1971); *State* v. *Sexton,* 82 N.M. 648, 485 P.2d 982 (April 9, 1971); *State* v. *Jefferson,* 79 Wash. 2d 345, 485 P.2d 77 (May 20, 1971); *Washington* v. *Borsey,* 6 Wash. App. 482, 494 P.2d 225 (February 28, 1972); see also *Collins* v. *Swensen,* 443 F.2d 329 (8th Cir.) (May 24, 1971). The holding in the *Coleman* case in no way undercut the well-established practice of permitting a bench warrant to be used by the Superior Court to obtain jurisdiction over a person held by a Circuit Court warrant charging the same crime. The defendant's claim that he was denied equal protection of the law by the elimination of the probable cause hearing in this case is without merit. The defendant was indicted by a grand jury, a procedure which afforded ample assurance to the defendant that the charges brought against him were based upon probable cause. *Chung* v. *Ogata,* supra; see also *State* v. *Hayes,* 127 Conn. 543, 581, 18 A.2d 895.

The defendant claimed in support of his plea in abatement that the members of the grand jury were chosen through a selection process which failed to obtain or to guarantee an impartial grand jury drawn from a cross section of the community and, further, resulted in a systematic and intentional exclusion of certain electors of the county.

The finding relative to the plea in abatement and motion to dismiss discloses that, after the Superior Court ordered a grand jury to be summoned, the sheriff for Fairfield County personally summoned the grand jury. From 1959 to June 19, 1967, when the defendant was indicted by the grand jury, the sheriff and his predecessor had maintained a list of names in the sheriff's office. This list or panel of prospective grand jurors was revised through addi-

tions and eliminations when persons died, moved to different locations or no longer desired to serve. Names were added to the list by the sheriff on recommendation of his deputy or persons who had high standing in the community. All persons listed were electors of above average intelligence and were volunteers for grand jury duty. The list included persons different in religious persuasion, race, national origin and political affiliation. The sheriff attempted to balance the list with respect to race and religious persuasion. In the five years prior to trial, only persons named in the list had been selected for the approximately fifteen grand juries called. The sheriff has never exercised his power of summons in order to obtain a grand jury. In summoning the grand jury for this case, the sheriff selected from his list forty-four persons whom he thought were best suited for service. From this group of forty-four persons the sheriff obtained eighteen persons. The sheriff avoided selecting persons from Bridgeport, and most of the grand jurors who were selected in this case had had prior experience and had participated as members of grand juries on homicide cases.

Although the due process clause guarantees the defendant a fair trial, "it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." *Alexander* v. *Louisiana,* 405 U.S. 625, 633, 92 S. Ct. 1221, 31 L. Ed. 2d 536. "Once the State chooses to provide grand . . . juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria." *Carter* v. *Jury Commission,* 396 U.S. 320, 330, 90 S. Ct. 518, 24 L. Ed. 2d 549.

The constitution of Connecticut, article first, § 8, provides that "[n]o person shall be held to answer

for any crime, punishable by death or life imprisonment, unless on a presentment or indictment of a grand jury, except in the armed forces, or in the militia when in active service in time of war or public danger." The only statutory requirement concerning the qualification of grand jurors is that they be electors in the county where the court is sitting. General Statutes § 54-45; *State* v. *Hamlin,* 47 Conn. 95. A statutory provision establishing the grand jury was first enacted in 1643 and, as amended in 1784, remains substantially the same to this day. 1 Col. Rec. 91; Acts & Laws, 1784, p. 93. *Kennedy* v. *Walker,* 135 Conn. 262, 267–69, 63 A.2d 589; see also *State* v. *Kemp,* 126 Conn. 60, 66, 9 A.2d 63. There are no statutes in this state governing the method of selecting and summoning grand jurors. Our courts have followed the common law in this regard except in isolated instances involving investigatory grand juries. See *State* v. *Hayes,* 127 Conn. 543, 578, 18 A.2d 895; *State* v. *Kemp,* supra, 64. At common law the grand jury was returned by the sheriff or other proper officer without the nomination of any other person whatsoever. *State* v. *Kemp,* supra; 38 Am. Jur. 2d, Grand Jury, § 15. The defendant claims that the common-law method of selecting a grand jury followed in this state since before the founding of this country is discriminatory, effects a systematic and intentional exclusion of electors, and results in a failure to obtain an impartial jury drawn from a cross section of the community. It is true that a local tradition cannot justify the systematic exclusion of class or race. *Eubanks* v. *Louisiana,* 356 U.S. 584, 78 S. Ct. 970, 2 L. Ed. 2d 991. More than a bare assertion that the system used was discriminatory, however, is required to overcome the presumption that the

grand jury was selected in a proper manner. See *State* v. *Davis,* 158 Conn. 341, 345, 260 A.2d 587, remanded for resentencing, 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750; see also the cases collected in the annotation at 82 L. Ed. 1053, 1069.

There is no constitutional requirement that members of a grand jury be selected in any particular manner. The constitutional guarantee merely forbids any intentional discrimination against race or class. *Brown* v. *Allen,* 344 U.S. 443, 73 S. Ct. 397, 97 L. Ed. 469; *Akins* v. *Texas,* 325 U.S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692. In the *Brown* case the Supreme Court stated (p. 474): "Our duty to protect the federal constitutional rights of all does not mean we must or should impose on our states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." Although there can be no intentional discrimination in the selection of jurors, this does not mean that there must be a member of every class or race on the jury. Note, 82 L. Ed. 1053, 1061. "Fairness in selection has never been held to require proportional representation." *State* v. *Davies,* 146 Conn. 137, 143, 148 A.2d 251; *Akins* v. *Texas,* supra, 403; 38 Am. Jur. 2d, Grand Jury, § 14.

The defendant admits in his brief that the "case at bar, of course, does not involve a claim of racial discrimination in the selection of the grand jury." His claim is that the system of selection by the sheriff "falls well short of the constitutional demand that the grand jury be truly representative of the community and the product of a cross-section of the community." The defendant seems to indicate that the constitutional mandate requires a random selection. There is no duty that grand jurors be selected

at random in order to comply with constitutional requirements. *Chance* v. *United States*, 322 F.2d 201, 204, 205–6 (5th Cir.); *Beatrice Foods Co.* v. *United States*, 312 F.2d 29 (8th Cir.), cert. denied, 373 U.S. 904, 83 S. Ct. 1289, 10 L. Ed. 2d 198. The test, well stated in *United States* v. *Tropiano*, 418 F.2d 1069, 1079 (2d Cir.), cert. denied, 397 U.S. 1021, 90 S. Ct. 1262, 25 L. Ed. 2d 530, where the key-man suggestion system of selecting jurors was attacked, "is not whether a particular method of selection, such as voter registration lists, was employed but whether the use of such a procedure [key-man suggestion system] resulted in an array which was a representative cross-section of the community or an array from which a cognizable group or class of qualified citizens has been systematically excluded." See *United States ex rel. Chestnut* v. *Criminal Court*, 442 F.2d 611 (2d Cir.) (volunteers); *United States* v. *Marcello*, 423 F.2d 993 (5th Cir.); *United States* v. *Butera*, 420 F.2d 564 (1st Cir.) (key-man system); *Beatrice Foods Co.* v. *United States*, supra (sponsor system); see also an exhaustive annotation in 82 L. Ed. beginning at 1053.

If the defendant establishes a prima facie case of discrimination, the state then must assume the burden of proving that no systematic discrimination as to race or class was employed in the selection of the grand jury. *Sims* v. *Georgia*, 389 U.S. 404, 88 S. Ct. 523, 19 L. Ed. 2d 634; *Coleman* v. *Alabama*, 389 U.S. 22, 88 S. Ct. 2, 19 L. Ed. 2d 22; *Whitus* v. *Georgia*, 385 U.S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599; *Hernandez* v. *Texas*, 347 U.S. 475, 480, 74 S. Ct. 667, 98 L. Ed. 866; *State* v. *Davis*, 158 Conn. 341, 345, 260 A.2d 587, remanded for resentencing, 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750.

The defendant has not pointed to any fact in the finding which in any way would indicate discrimination by the sheriff in the selection of the grand jury. The findings of the court that the list of jurors from which the sheriff selected the grand jury consisted of persons of different religions, races, and political affiliations stand unchallenged by the defendant. Furthermore, there is no claim that an intentional discrimination was shown by a consistent pattern of selection resulting in disproportionate representation of race or creed or class as found in *Sims* v. *Georgia,* supra, and *Alexander* v. *Louisiana,* 405 U.S. 625, 632, 92 S. Ct. 1221, 31 L. Ed. 2d 536.

It is not the function of the court to overthrow a jury selection method because of mere speculation or conjecture. The absence of proof of a prima facie case of purposeful discrimination renders the defendant's claim that the grand jury selection method was unconstitutional without merit.

The remaining two grounds for the defendant's plea in abatement are that his constitutional rights were violated when he was denied the presence of counsel during the grand jury proceedings and that he was refused the right to compel the grand jury to maintain minutes of its proceedings.

It has been unequivocally established in this state that neither precedent nor the due administration of justice requires that counsel be present with the defendant during the grand jury proceedings or that a stenographic record be made of the grand jury proceedings. *State* v. *Delgado,* 161 Conn. 536, 539, 290 A.2d 338, remanded for resentencing, 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764; *State* v. *Vennard,* 159 Conn. 385, 390, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d

625; *State* v. *Stallings,* 154 Conn. 272, 282, 224 A.2d 718. No useful purpose would be served by repeating the discussion given and the citations made in these cases. Counsel for the defendant has not offered, and we have not found, a compelling reason to justify reconsideration of the rule. There is no constitutional or statutory right to have counsel present in the grand jury room, and there was no error in the refusal of the court to permit the making of a stenographic record.

The remaining assignments of error, except those directed to the denial of the motion to set aside the verdict, are to be tested by the finding made by the trial court.[2] Prior to trial, the defendant attacked the selection of the petit jury through a challenge to the array on seven grounds. In his brief, the defendant restricts his claim of error to two grounds: (1) the selection of the jury was in violation of General Statutes §§ 51-217 to 51-221, and (2) the selection was in derogation of his constitutional rights. A hearing on the challenge to the array was held, and the court heard evidence from the members of the jury committees representing six of the twenty-three towns from which the panel was chosen. The finding of the court indicates that the process used in developing the jury panel in the six towns violated § 51-221. Some of the six jury committees exempted persons who were not entitled to be exempt by statute, and some did not select prospective jurors strictly by lot. In some instances

---

[2] The defendant assigns error in the court's refusal to find facts set forth in his draft finding, and also asserts that facts were found without evidence. Since these assignments of error are not mentioned in the brief, they are considered to be abandoned. *Housing Authority* v. *Dorsey,* 164 Conn. 247, 248–49, 320 A.2d 820; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495.

women having a right of elective exemption were exempted from jury service without an inquiry as to whether they elected to serve. Some of the committees exercised judgment in making a selection of persons to serve and in some instances exercised discretion in eliminating hardship cases which in their experience they knew the court would excuse. The finding also reveals that the jury commission receives annually between 11,000 and 12,000 names of prospective jurors from the various jury committees in the county and that challenges went to seventy-six jurors of a panel of 137. There was no finding or conclusion of prejudice to the defendant. The finding is silent as to the action of the jury committees in the remaining seventeen towns in selecting juries. It is presumed that these jury committees acted in accordance with the statutory provisions and that the selection of jurors for the jury panel in these towns was in accordance with law. *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476; *Comley ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161, 174 A. 415; *Salt's Textile Mfg. Co.* v. *Ghent,* 107 Conn. 211, 215, 139 A. 694; 50 C.J.S., Juries, § 163.

A challenge to the array will be allowed only on some ground which arises out of the proceedings in selecting and summoning the panel. *State* v. *Smith,* 138 Conn. 196, 202, 82 A.2d 816. In *State* v. *McGee,* 80 Conn. 614, 619, 69 A. 1059, the challenge to the array was allowed because the failure to follow the statutory command in selecting names was applicable to all the names selected and thus applied to the entire panel. "A challenge to the array of jurors is an objection to the whole panel of jurors at once, and in order to be available it must be for a cause that affects all the jurors alike." *State* v. *Hogan,* 67 Conn. 581, 583, 35 A. 508; *State* v. *Smith,*

supra; *State* v. *Rocco,* 109 Conn. 571, 572, 145 A. 47; *State* v. *Luria,* 100 Conn. 207, 209, 123 A. 378; 47 Am. Jur. 2d, Jury, § 224; 5 Wharton, Criminal Law and Procedure § 1961. As the defendant's challenge applied only to the doings of jury committees in six of twenty-three towns, it was inadequate on its face. It clearly did not claim a deficiency in the selection process used to obtain the jurors from seventeen towns and thus did not attack the validity of the entire panel. *State* v. *Hogan,* supra. A further comment is necessary to ensure that the jury committttees which proceeded in violation of the statutory requirements will be fully apprised of their responsibilities. The statutory provisions relating to the drawing and summoning of the jury panel are mandatory. *State* v. *McGee,* supra; see also *State* v. *Ferraro,* 146 Conn. 59, 63, 147 A.2d 478; *State* v. *Frost,* 105 Conn. 326, 338, 135 A. 446; *State* v. *Chapman,* 103 Conn. 453, 471, 130 A. 899; *State* v. *Kelley,* 100 Conn. 727, 730, 125 A. 95. The actions of the jury committees in the six towns examined, Easton, Fairfield, Shelton, Stratford, Trumbull and Westport, were contrary to the law and resulted in an improper selection of prospective jurors. It is noted that the irregularity in the selection of the veniremen in this case did not relate to the ability, honesty or impartiality of the jurors ultimately selected after the voir dire. In *State* v. *Ferraro,* supra, this court, although disallowing an untimely challenge to the array, carefully examined the record to ensure that no prejudice resulted from the jury selection. In like manner, although the challenge to the array in this case was ineffective in that it did not attack the entire panel, we have examined the record to determine if the selection process used to obtain the defendant's jury preju-

diced his defense. It does not appear that the rights of the defendant were prejudiced by the manner in which the panel was drawn.

The second ground for challenge, which concerns the defendant's constitutional rights, can be disposed of by reference to the discussion concerning the selection of the grand jury, a discussion applicable as well to the selection of the petit jury in that respect. No showing is made of any discrimination as to race, creed or class. The court was not in error in overruling the challenge to the array.

During the course of the selection of the jury, twelve panel members were excused by the court because of their expressed opposition to capital punishment. The defendant claims that such exclusion deprived him of his rights under the sixth and fourteenth amendments to the United States constitution. This claim need not be considered, since the defendant is not under a sentence of death. See *Moore* v. *Illinois,* 408 U.S. 786, 800, 92 S. Ct. 2562, 33 L. Ed. 2d 706; *Witherspoon* v. *Illinois,* 391 U.S. 510, 521-22 n.21, 88 S. Ct. 1770, 20 L. Ed. 2d 776; *State* v. *Vennard,* 159 Conn. 385, 406, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625.

Statements made by the defendant to police officers while he was in custody were admitted in evidence over objection, and proper exceptions were taken. The defendant claims that these statements were inadmissible on three grounds: (1) he was not presented to the Circuit Court at its next session and without unreasonable delay; (2) he was not given the proper warning of his constitutional rights as required since the case of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; and (3) the state failed to sustain its burden

of proof that the defendant waived his rights to remain silent and to have the assistance of counsel.

The first ground of objection is without merit. The defendant was arrested on May 16, 1967, at about 9:20 a.m. At about 1:45 p.m. that same day, he was taken to the Circuit Court in the second circuit and presented before a Circuit Court judge. This presentment was in compliance with General Statutes § 54-1b and did not put into effect the provisions of General Statutes § 54-1c. *State* v *Darwin,* 155 Conn. 124, 133, 230 A.2d 573, rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630; see also *State* v. *Vollhardt,* 157 Conn. 25, 39, 244 A.2d 601.

The second ground of objection is that the defendant was not given the proper warnings of his constitutional rights. On arrest, he was told that he had a right to remain silent; that anything he said could and would be used against him in a court of law; that he had a right to an attorney; and that if he could not afford an attorney one would be provided for him by the state prior to any questioning. These same warnings were presented to the defendant on a form entitled "Notification of Rights." At the Bridgeport police station, the defendant read the form, understood it and signed it. At no time was the defendant told that he had the right to stop answering questions at any time. The defendant claims that this omission was fatal. The defendant relies on *State* v. *Benitez,* 157 Conn. 384, 391, 254 A.2d 564, wherein this court discussed the warnings required by *Miranda* v. *Arizona,* supra, 479.

In *Benitez* the facts indicated that, before the defendant was questioned, the interrogating officer failed to inform him specifically that if he was unable to afford an attorney one would be provided for

him prior to any interrogation and that if he did answer questions he had the right to stop answering at any time. The holding of the *Benitez* case accordingly was that "[u]nder the holding of the United States Supreme Court in the *Miranda* case . . . the trial court erred in admitting into evidence the confessions of the defendant." *State* v. *Benitez,* supra, 391.

Clearly, the decision in *Benitez* was compelled by the failure to warn the accused of his right to have counsel provided "prior to any interrogation." This warning was one of the four required warnings set forth in *Miranda,* supra, 479, and was extensively discussed in *Benitez,* supra, 389. The opinion in *Benitez* also included references to "the right to stop answering questions at any time." These references to a right to stop answering questions at any time cannot be accurately characterized as dicta. *People* v. *Tubbs,* 22 Mich. App. 549, 177 N.W.2d 622. There remains, however, confusion regarding the precise impact of *Benitez,* since the issue of the state's failure adequately to warn the defendant of his right to counsel was enough in itself to require reversal of that conviction. Since the single question of whether a defendant must be warned, prior to questioning, that he may cease answering questions at any time has now been presented, a reexamination of *Miranda* is required.

In *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, the United States Supreme Court outlined the warnings necessary to safeguard an accused's constitutional rights. See pp. 444, 467–74, 478–79. The court stated (p. 479) that, prior to any questioning, the person must be warned that "he has the right to remain silent, that anything he says can be used against him in a court of

law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." Elaborating on the above-quoted requirements, the court stated in a further extended discussion (p. 473): "*Once warnings have been given* the subsequent procedure is clear. [Emphasis added.] If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."

The *Miranda* opinion does not conclude that explanation to an accused of this requirement for a police cutoff of questioning is an integral part of the required initial warning requisite to a valid waiver. *Green* v. *State,* 45 Ala. App. 549, 233 So. 2d 243. There can be no doubt that, if the accused indicates in some way that he wishes questioning to cease, the interrogation must end. This requirement is directive only and is not a required warning under *Miranda* but is instead a caveat to the police that if an accused wishes to stop answering questions the police have a duty to close the interrogation. This court is cognizant that the *Miranda* cards used by some law enforcement officers include a warning that the accused may close the interrogation at any time. While such a warning is desirable fully to apprise an accused of his general right to remain silent, a statement taken under circumstances which show that the required *Miranda* warnings were given may not be held inadmissible simply because the accused was not told that he could stop answering questions at any time. Other jurisdictions which have considered whether *Miranda* required a special fifth warning of the accused's right to terminate the interrogation at any time have held

that this warning is not required and that confessions taken in the absence of such a warning are not constitutionally tainted. *Green* v. *State,* supra; *People* v. *Smith,* 30 Mich. App. 34, 186 N.W.2d 61; *State* v. *Carlton,* 83 N.M. 644, 495 P.2d 1091. The accused retains a full opportunity at trial to demonstrate that he asked to terminate the questioning, and the state must thereafter assume the heavy burden of showing that the statement was taken after a voluntary waiver of the right to remain silent. It is noted that the defendant did not claim in this case that his statement was taken after a request to halt questioning. In fact, the statement given to the police here was voluntary and the conversation was initiated by the defendant. The warnings read to him prior to statements given by him were in accord with constitutional requirements and complied with the so-called *Miranda* rule. The decision in *State* v. *Benitez* should be interpreted in a manner consistent with this opinion.

The defendant has also claimed that the statements given by him to the police were not admissible since he had requested an attorney prior to giving the statements. The finding demonstrates that the defendant did say, "I want to see a lawyer before I tell you what actually went on or what happened." *Miranda* v. *Arizona,* 384 U.S. 436, 473, 86 S. Ct. 1602, 16 L. Ed. 2d 694, noted that "[i]f the individual states that he wants an attorney the interrogation must cease until an attorney is present. At that time the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."

After the defendant indicated that he should call an attorney, no attempt was made to interrogate him and he was given free use of a telephone.

The defendant thereafter did, in fact, make several calls, including one to his grandmother. Following these calls, he was alone and waited for his grandmother. When she arrived at the police station, the defendant had a conversation with her. When he finished talking to her, he repeated the gist of that conversation for the police and then made a full statement to Lieutenant Fabrizi.

The issue thus presented is whether the state sustained its heavy burden of showing that the defendant knowingly and intelligently waived his right to counsel. *Miranda* v. *Arizona,* supra, 475. It is clear from the finding that the court could reasonably have concluded that the defendant, after speaking to his grandmother, voluntarily waived his request for counsel and freely gave a statement to the police. The defendant initiated this exchange and was not interrogated until after he related his involvement in the robbery. This court could reject the trial court's conclusion of voluntariness only by determining that as a matter of law once an accused requests counsel he may not thereafter give any statement or make a knowing and intelligent waiver of counsel. The Supreme Court in *Miranda* v. *Arizona,* supra, did not lay down such a rule. We conclude that an accused who requests counsel may thereafter voluntarily waive his right to counsel provided he has had in the interim a full oportunity to obtain counsel or to have an attorney appointed for him. The police may conduct an interrogation when such a knowing, intelligent and voluntary election to proceed without an attorney has been manifested by the defendant. See *United States* v. *Scogin,* 459 F.2d 182, 184 (8th Cir.); *United States* v. *Brown,* 457 F.2d 731 (1st Cir.); *Nash* v. *State,* 477 S.W.2d 557 (Tex. Crim. App. 1972).

The third ground of objection to the admission of the defendant's statements was that the state did not prove that the defendant had waived his constitutional rights prior to giving the statements. The unattacked findings of the court disclose that on arrest the defendant was orally given the warning previously discussed; that he had previously appeared in court as a defendant on numerous occasions; that he had been advised of his constitutional rights by judges on earlier occasions; that he read and signed a "Notification of Rights," which was a printed form advising the rights of an individual under arrest; that he was able to read and write; and that he understood what the "Notification of Rights" form meant at the time he signed it. The prior experience of receiving warnings of constitutional rights is not a sufficient substitute for the warnings; *Miranda* v. *Arizona,* supra, 468–69; but such experience may be shown as evidence that the constitutional warnings were understood and that the waiver was knowingly and intelligently made. See *Thessen* v. *State,* 454 P.2d 341 (Alaska), cert. denied, 396 U.S. 1029, 90 S. Ct. 588, 24 L. Ed. 2d 525; *Mingo* v. *People,* 171 Colo. 474, 468 P.2d 849. The United States Supreme Court has held that the background and experience of the accused has a bearing on the question whether an intelligent waiver was given. *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461, and reasserted in *Miranda* v. *Arizona,* supra, 475. The finding amply supports the court's conclusion that the defendant was properly advised of his constitutional rights and, after a knowing waiver of his privilege to remain silent and to have the services of an attorney, made statements to the police. Such statements were admissible in evidence and no

error was committed in allowing this evidence to be offered.

Error was assigned in a portion of the court's charge to the jury concerning unfavorable inferences which may be drawn from the failure to produce a witness or party. The rule as stated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598, and reiterated in *Queen* v. *Gagliola*, 162 Conn. 164, 168, 292 A.2d 890, need not be repeated in its entirety. In brief, two necessary elements must be shown before an unfavorable inference may be drawn against a party not producing a witness: the witness must be available, and he must be a witness whom the party would naturally produce. The defendant's offers of proof claimed that he bought a watch from a man who lived at the St. George Hotel whose first name was Kelly or Killy, and that several days or a week later he sold the watch to another. The defendant never saw Kelly or Killy again, and there was no other evidence at the trial as to him. The state offered evidence to prove that the watch which was purchased from the defendant was the victim's watch. The record is completely silent as to one Oliver Womble.

The court's charge[3] was in part in accordance

[3] "[Court's charge] In these cases and in all cases wherever there is a jury, both sides may submit law to the court that they desire to have read to the jury. In this case one of the state's witnesses testified that one Oliver Womble was on Lexington Avenue when the accused came across the street from the Charles Green apartments. Thereafter Officer Pelham testified that he had, the day before he testified, compared the fingerprints which he found with the prints of Oliver Womble. [Oliver Womble was not produced as a witness in the case by the state.] The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause, and this also is true as to the man who is referred to as Kelly or Killy or the truck driver who was mentioned by the accused and who was not

with a request to charge. This request is not printed in the record as required by Practice Book § 635. Ordinarily, when the record does not contain any written request to charge, only the exceptions which were taken to the charge as given are considered. *Gulia* v. *Ortowski,* 156 Conn. 40, 44, 238 A.2d 396; *State* v. *Mallette,* 153 Conn. 584, 587, 219 A.2d 447. In this case, however, the exception taken by the defendant repeatedly makes reference to his request to charge on the subject matter. In order clearly to focus on the issue being presented, it is necessary to examine the request to charge included in the file.[4] *Pollack* v. *Howe,* 145 Conn. 423, 143 A.2d 648; see also *State* v. *Criscuolo,* 159 Conn. 175, 176, 268 A.2d 374; *O'Keefe* v. *Bassett,* 132 Conn. 659, 660, 46 A.2d 847. On comparison of the portion of the charge attacked with the request to charge concerning Womble made by the defendant, it is clear that the court closely followed the request to charge and that it added thereto only the reference to Kelly or

called to testify as to the watch which was sold to James Cobbs. So it's equally applicable to both Mr. Womble and to the truck driver or Kelly in this case."

[4] "[Request to charge] In this case one of the state's witnesses testified that one Oliver Womble was on Lexington Avenue when the accused came across the street from the Charles Green apartments. Thereafter Officer Pelham testified that he had, the day before he testified, compared the fingerprint which he found with the prints of Oliver Womble. [Oliver Womble was not produced as a witness in the case by the state.] The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. The failure to offer such evidence is not proof of any specific fact, but it does permit the inference that the evidence of the witness would be unfavorable to the party's cause. I ask you to first consider whether or not, from the evidence at the trial you find that the production of Oliver Womble as a witness was within the state's power. If you so find then you must infer that his evidence would have been unfavorable to the State's case."

Killy. The finding in no way indicates that the witness Kelly or Killy should have been treated differently from the other missing witness, Womble. There was no evidence that either witness was available or that it was within the power of the one who would naturally produce him to do so. The court should not have charged on the unfavorable inference rule as requested by the defendant. *Queen* v. *Gagliola,* supra, 169. As the portion of the charge which was erroneous was induced by the defendant, he has no cause to complain. *Andrews* v. *Dougherty,* 96 Conn. 40, 46, 112 A. 700; see also *Guglielmo* v. *Klausner Supply Co.,* 158 Conn. 308, 317, 259 A.2d 608; *Battistelli* v. *Connohio, Inc.,* 138 Conn. 646, 649-50, 88 A.2d 372; *Housing Authority* v. *Pezenik,* 137 Conn. 442, 448, 78 A.2d 546. After the charge had been given, the defendant took an exception, claiming that there was sufficient evidence on availability as to Womble but not as to Kelly or Killy. The record does not support this claim, and, consequently, the exception did not sufficiently alert the court to the error induced by the request to charge. *Lowell* v. *Daly,* 148 Conn. 266, 271, 169 A.2d 888; *Hofacher* v. *Fox,* 142 Conn. 179, 185, 112 A.2d 217.

The defendant's final assignment of error is that the court erred in denying his motion to set aside the verdict as being against the weight of the evidence. This motion is tested by the evidence printed in the appendices to the briefs. *State* v. *Kearney,* 164 Conn. 135, 136, 318 A.2d 100; *State* v. *Cobb,* 159 Conn. 31, 32, 266 A.2d 393. The appendix to the state's brief discloses in part: The body of Batista Carbone was found on August 28, 1966, on the living room floor of his apartment in the Charles F. Green apartments. A pathologist con-

cluded that death was caused by strangulation and eleven stab wounds. A friend of the defendant saw him on a Saturday evening at the end of August, 1966, in front of the Charles F. Green apartments where the deceased lived. The defendant walked to the car of a friend with a towel with red flowers or blood on it which he put on the back floor of the car. At that time the defendant told his friend: "We just killed a man." The defendant requested another friend to give him a ride home. The automobile stopped at a street intersection, where the defendant deposited the towel and a kitchen knife with a wooden handle in a sewer. Sometime later the defendant showed his friend a newspaper article about the death of Batista Carbone, and the defendant said something about its being true.

Around Labor Day, 1966, a state's witness purchased a used Timex watch from the defendant. The watch was identified as being the watch of Batista Carbone, the deceased.

While in custody, the defendant admitted that he and another followed a man to the Charles F. Green apartments and rushed that man when he opened the door to the apartment. The defendant stated that he hit the man, knocked him unconscious and lowered him to the floor and went through his pockets. The defendant described how a strongbox was forced and wiped to remove fingerprints. He stated further that his friend left briefly and then returned and handed him a towel, a knife with blood on it, a wristwatch and a $10 bill. The defendant stated that he took the items across the street to two other friends and told them that he and his friend had killed a man; he also stated that, as he was driven home, he dumped the towel and knife into a sewer at a particular intersection.

On the evidence stated, the jury reasonably could have reached the verdict rendered, and the court was not in error in refusing to set aside the verdict.

There is no error.

In this opinion HOUSE, C. J., SHAPIRO and BOGDANSKI, Js., concurred; COTTER, J., concurred in the result.