## STATE OF CONNECTICUT *v.* JULLION CUFFEE

| SUPERIOR COURT | JUDICIAL DISTRICT OF FAIRFIELD AT BRIDGEPORT | FILE No. 61805 |
|---|---|---|

Memorandum filed May 6, 1992

*Gerard Eisenman,* assistant state's attorney, for the state.

*Dante R. Gallucci,* for the defendant.

S. FREEDMAN, J. The defendant asks this court to transfer him back to the juvenile session of the Superior Court. He was transferred to part A on a murder charge pursuant to General Statutes § 46b-127, after a hearing in probable cause conducted with appropriate safeguards. A finding of probable cause was made by the court in part A pursuant to statute, and he was

found guilty of the lesser included crime of manslaughter in the second degree after a full trial, during which he requested that the court charge the jury on that specific offense.

The statute involved, § 46b-127, is based upon a number of public acts: Public Acts 1975, No. 75-620; Public Acts 1976, Nos. 76-194 and 76-436; Public Acts 1979, No. 79-581; Public Acts 1983, No. 83-402; Public Acts 1986, No. 86-185; and Public Acts 1990, No. 90-136. The court is familiar with a considerable portion of this legislation. The statute originated in 1975 and was codified as General Statutes § 17-60b, the precursor to the present statute. While changes were made in 1976, in 1979 the law was amended by making the transfer for murder mandatory. Further changes occurred in 1983 and 1986 and finally in 1990 when the legislature "codified" the juvenile's rights at the transfer hearing and his right to plead guilty to a lesser offense without resuming juvenile status.

Section 46b-127 provides in pertinent part: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . . If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

## I

The defendant relies on the last sentence of § 46b-127 and leans heavily on *State* v. *Torres,* 206 Conn. 346, 538 A.2d 185 (1988). Counsel's reliance on *Torres* is

misplaced. In *Torres,* there was no finding of probable cause in part A, in this case there was such a finding. The defendant actually had two probable cause hearings, one at the juvenile level and one in part A as an adult. Both produced findings of probable cause. The difference is determinative. In *State* v. *Torres,* supra, 358, the court found that the legislative intent was such that absent a finding of probable cause in part A, the child could not be prosecuted for manslaughter without frustrating the transfer scheme, and must be returned to the juvenile session. In our case, once adult status was confirmed by a finding of probable cause in part A, the defendant could not be returned.

Contrary to the defendant's argument, the logic of *Torres* leads to the opposite conclusion. The court's concerns in *Torres* are not present here. The defendant was properly transferred, and after a positive finding at the probable cause hearing under General Statutes § 54-46a, he was assured adult status, not some hybrid form of treatment the legislature never intended. The interpretation of § 46b-127 that the defendant asks this court to adopt would frustrate the transfer scheme of the legislature to the same extent as the state's position did in *Torres.* The language of § 46b-127, the legislative history, public policy and case law all militate against the defendant's interpretation.

The defendant wants to leapfrog over *Torres* and do precisely what the legislature did not want. He argues that the *plain language* of § 46b-127 mandates his retransfer since he was not found guilty of murder. The language of § 46b-127 is *anything but plain.* The last sentence of the law on which the defendant relies, was found by the court in *State* v. *Torres,* supra, 355, not to be free from ambiguity when read in isolation.

That statute, however, must be read as a whole, which requires the court to reconcile all of its parts.

*Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977). Therefore, we must if possible also harmonize the statute's final sentence with the sentence that precedes it, a sentence which on its face, appears to conflict with it. The preceding sentence of § 46b-127 states: "Upon the effectuation of the transfer, such child shall"—the language is mandatory—"stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . ." It is important that the two sentences are in close conjunction to each other. See for instance *State* v. *Burney,* 189 Conn. 321, 327, 455 A.2d 1335 (1983). Obviously, they are meant to be read together harmoniously.

It is settled law that if an adult (which includes a sixteen year old) is charged with murder, a finding of probable cause at a hearing in part A automatically puts that person on notice that he is facing a murder charge *and* prosecution for any applicable lesser included offenses.

General Statutes § 53a-45 (c) provides: "The court or jury before which any person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 54-46a is tried may find such person guilty of homicide in a lesser degree than that charged." That statute's roots reach far into the past.

In *State* v. *Rodriguez,* 180 Conn. 382, 402, 429 A.2d 919 (1980), our Supreme Court held: "It is a well-settled principle of constitutional law that where one or more offenses are lesser than and included within the one charged, notice of the one charged constitutes notice of any lesser included offenses." "By the charge on the greater offense of murder, the defendant is put on notice that he will be put on trial for his action in causing the death of another person. Thus, having been given notice of the most serious degree of culpable intent . . . he is implicitly given notice of those lesser included homi-

cides that require a less serious degree of culpable intent." Id., 405. The court also held that it is error to refuse to charge on a lesser included offense when the evidence and *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), warrant it. *State* v. *Rodriguez,* supra, 406. The court cited approximately twenty jurisdictions plus the Model Penal Code, which attests to the universal nature of this rule. "Because the legislature is presumed to know the state of the law when it enacts a statute . . . we can assume that absent an affirmative statement to the contrary, it did not intend to change the existing law . . . when it enacted the present transfer statutes." *In re Ralph,* 211 Conn. 289, 300, 559 A.2d 179 (1989). This is especially true in regard to the taking of a human life. This is what being tried as an adult means.

There is only one way to rationally find internal harmony between the sentence which states that the defendant "shall stand trial and be sentenced, if convicted, as if he were sixteen years of age," and the next sentence which states, "if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile." That requires applying here the common law and statutory rule of *Rodriguez:* that once probable cause was found at the probable cause hearing, Cuffee *was* treated as a sixteen year old and put on notice that he was liable for prosecution for murder *and* for applicable lesser included charges. Otherwise, he would not be treated as a sixteen year old, as the statute mandates. We can thus harmonize the two sentences internally with the recognition that when a juvenile, after receiving all legislative safeguards, is prosecuted for murder, his trial is the same as that of an adult. This necessarily includes the possibility of liability for appropriate lesser included offenses, *but it also includes his right to request them, which is universally considered by the criminal law to be a valuable*

*asset to a defendant.* It makes no sense that a juvenile not have the same advantages as an adult if he is being tried as an adult.

## II

The legislative history supports this interpretation. In 1979, the Senate discussed an amendment to Senate Bill No. 1227 marked LCO 9145. The bill passed, making transfer mandatory for a juvenile charged with murder between the ages of fourteen and sixteen. The amendment passed overwhelmingly and the bill passed unanimously. See 22 S. Proc., Pt. 14, 1979 Sess., pp. 4663–76, 4791, in which the following took place: "Senator [Eugene A.] Skowronski: . . . Does that word 'murder' there mean first degree murder? Or does it mean manslaughter one, two, etc.

"The Chair: Senator [Joseph A.] Ruggiero.

"Senator Ruggiero: . . . [A]ny type of murder is the intent of the word 'murder' Senator Skowronski.

"Senator Skowronski: So it would also include therefore, the various degrees of manslaughter?

"The Chair: The answer to that is—

"Senator Ruggiero: Yes."

Senator Ruggiero was one of three senators who offered the amendment along with Senator (now United States Senator) Joseph I. Lieberman and Senator Russell Lee Post, Jr. We have long recognized that the statements of a legislator who reports a bill out of committee or sponsors legislation—which of course includes amendments that pass—are entitled to particular weight and careful consideration in discerning legislative intent. See for instance *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 760 n.14, 601 A.2d 1005 (1992); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 15 n.4, 434 A.2d 293 (1980).

Here, one of the amendment's sponsors clearly intended the word "murder" to include the various degrees of manslaughter. The other sponsors of the amendment (and the other legislators) made no statement to the contrary, obviously comfortable with the statement of intent. It is powerful evidence of the meaning of the statute.

## III

As amended by No. 90-136, § 2, of the 1990 Public Acts, § 46b-127 inserted language allowing a juvenile transferred to "adult court" to plea to a lesser offense which may not be a transferable offense, without returning to juvenile status. The language is important. First, it eliminates any talismanic effect that can be associated with the use of General Statutes § 53a-54a, showing that it is merely a high water mark the legislature used as a starting point for transfers. Because of the law's protections—a transfer hearing requiring a finding of probable cause and a hearing in part A requiring a finding of probable cause—there is a heavy burden on the state before subjecting a juvenile to adult treatment, despite the questionable assertions of the defendant's brief.

Second, it again provided a clear showing that the legislature intended to treat a juvenile as an adult in *all* respects, once the two findings of probable cause are made that he violated § 53a-54a.

The legislative history is highly instructive. Both the House and Senate chairmen of the Judiciary Committee indicate that the amendment is *interpretive*. In the House of Representatives, Representative Richard D. Tulisano, the House cochairman who brought out the bill, said to the chamber: "[T]his amendment *makes it clear* that in the event that a juvenile is transferred . . . and . . . at that point pleads to a lesser offense which may not be a transferable offense, they would

not then become a juvenile, but would remain in the adult court for processing." (Emphasis added.) 33 H.R. Proc., Pt. 9, 1990 Sess., p. 2948.

He did not say the amendment added or subtracted anything, or even changed anything. He simply said that the amendment "makes it clear"—words often used for an amendment which is merely *interpretive* rather than amendatory.

In the Senate, Senator Richard Blumenthal, the Senate vice chairman who also brought out the bill, told that body: "This bill essentially codifies and formalizes certain rights, due process rights, already accorded juveniles in transfer proceedings." 33 S. Proc., Pt. 7, 1990 Sess., p. 2338.

The statements speak for themselves. It is difficult not to conclude that they were discussing interpretive legislation declaring existing rights. It appears that they spelled out the already existing right to plead guilty that they realized was implicit under the lesser included offenses doctrine set forth in *State* v. *Rodriguez,* supra. One must conclude that the right to plead guilty to manslaughter in the second degree after a finding of probable cause in part A already existed. Can anyone seriously argue that if the right to plead to manslaughter in the second degree existed, the right to be found guilty of it—especially after the defendant requests a jury charge on manslaughter in the second degree—does not exist? It would be an exercise in sophistry to suggest that a transferred juvenile can plead guilty to manslaughter in the second degree but not be found guilty of it, after requesting a jury charge on that very offense. Statutes should not be interpreted to achieve bizarre results.

## IV

But even if the legislation were found not to be interpretive, this much is clear: The legislation

addressed *only* pleas of guilty, not a jury finding of guilty. Therefore, either the legislature in 1990 intended to allow a juvenile to plead guilty to lesser offenses, but NOT allow convictions of lesser offenses (which is patently absurd), OR the legislature knew the court already had the power to convict for a lesser included offense because of the well known doctrine summed up in *Rodriguez* on lesser included offenses. Logic compels this choice since Public Act 90-136 speaks only of pleas, not convictions. There is no practical difference between the two that the court can justify. This court concludes that it has the power to respond to the defendant's request to charge on manslaughter in the second degree if it is appropriate under our case law; that the jury has the power to lawfully convict the defendant of manslaughter in the second degree; and that the court may sentence for that conviction.

## V

Even if this court somehow construed the statute inconsistently with its legislative intent, the defendant has waived any right to retransfer by expressly requesting the jury charge on manslaughter in the second degree. The protections associated with transfer and retransfer of juveniles are the result of statutory authority, not constitutional rights. See *State* v. *Anonymous,* 173 Conn. 414, 417, 378 A.2d 528 (1977). "At least, where no constitutional rights are violated, when an accused requests in writing that an issue be submitted to the jury, he cannot, on appeal claim error in its submission." *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987); *State* v. *Hinckley,* 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985); see *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982); *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973). Statutory rights can be waived.

By requesting a jury charge on manslaughter in the second degree and thereby giving himself a chance at a lesser penalty, the defendant received the benefit of his own request. That alone should now preclude him from turning that shield into a sword. This was not a close case regarding guilt. It was clear to the court that the jury did not believe the defendant's testimony, any more than the court did. It is the court's judgment that the jury clearly granted the defendant leniency based on his age, and that if there were no lesser included offenses to consider, they would have had to find him guilty of murder.

Moreover, if the court did not grant the defendant's request to charge manslaughter in the second degree, the defendant would have claimed error in the court's refusal; *State* v. *Burge,* 195 Conn. 232, 243–45, 487 A.2d 532 (1985); since the test in *State* v. *Whistnant,* supra, 576, was satisfied.

No defendant should be permitted to play that type of game with a trial court. He wants to have his cake and eat it too. Granting the defendant's motion would amount to a classic case of trial by ambush, a circumstance seriously criticized by our Supreme Court. A judge must be able to rely on the good faith of the parties who appear before the court, or a trial becomes a veritable minefield. If it was *not* a proper charge it should not have been requested. If it *was* a proper charge, the present request should not be made nor honored. The defendant abdicated the right to make it, by requesting the charge in the first place and benefiting from it. Now he wants to reclaim his waiver. There is a place for justice in this discussion.

## VI

The defendant's brief states: "Statutes are to be construed to give effect to the intent of the legislature.

*Norwich* v. *Silverberg,* 200 Conn. 367 [511 A.2d 336 (1986)]." The legislative intent of this statute is not difficult to discover.

In 1979, Representative Robert G. Jaekle, the then Assistant House Minority Leader, speaking on the bill referred from the Senate, discussed "the most serious offense against man" and concluded that juveniles "be given a trial like an adult for the commission of a crime that I don't normally consider a juvenile crime." 22 H.R. Proc., Pt. 35, 1979 Sess., p. 12398. Representative Arnold F. Wellman, Jr., a former member of the probation department stated: "We have to begin to hold these young people accountable for their actions. . . . [W]e are responding to a cry in every constituency here today . . . to put some teeth into our juvenile laws." Id., p. 12408.

In the Senate, Senator Joseph I. Lieberman, the Senate Majority Leader, suggested strongly that: "[W]e must deal in this bill with that small group of most serious juvenile criminals. The only way that I know to begin to do that is to create a provision for the most serious offenders that provides for mandatory transfer to the Superior Court, to be tried as what they are, which is adults in any other sense but their age." 22 S. Proc., Pt. 13, 1979 Sess., p. 4445. He further stated: "[W]e have young people who are criminals, who are committing serious crimes, who do not deserve the special protections and the leniency of the juvenile court . . . ." Id., p. 4446. This only skims the surface of legislative intent. There are many similar statements.

In construing a statute courts must "look to the mischief it was designed to remedy . . . to determine what purposes the legislature sought to achieve." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991). Courts also look to legislative history, circumstances surrounding enactment, the legislative policy designed to be implemented, and its relationship with

existing legislation and common law principle. *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* 202 Conn. 583, 589, 522 A.2d 771 (1987). On all these counts, the defendant's argument fails. The records of the various public acts reveal that the legislature, in response to the demands of constituents, was getting tough with juveniles who kill. *That* is the intent of what we know today as § 46b-127. The interpretation pressed on us by the defendant is out of touch with the reality of that legislative intent.

## VII

This court believes that as a matter of justice and public policy, the legislature could not have intended that a major felony homicide—manslaughter in the second degree—would go unpunished. The frank purpose of the statute was and is to treat juveniles sternly and harshly in homicide cases. To be blunt, the public demanded, and the legislature passed, a law to get tough with juvenile killers.

Yet if the defendant is returned to the juvenile session, he will not be sentenced as an adult as the statute demands. Moreover, he *cannot* even be tried again for delinquency on the same set of facts constituting this killing without violating double jeopardy—which would be the first claim the defendant would make. Simply stated, the state had its chance. If this court cannot sentence him for manslaughter, no court can. In the juvenile session, he would have to be brought up on a delinquency charge for manslaughter, which implicates the prior prosecution and double jeopardy. A delinquency finding based on manslaughter in the second degree is precluded, since it is an appropriate lesser included offense of murder in this case.

Our Supreme Court has long forbidden the consequences of double jeopardy. *State* v. *Langley,* 156 Conn. 598, 600, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969). The

United States Supreme Court held that double jeopardy would apply where one proceeding occurs in juvenile court and the other in adult court. *Breed* v. *Jones,* 421 U.S. 519, 541, 98 S. Ct. 1779, 44 L. Ed. 2d 346 (1975). The court foreclosed the prosecution of a juvenile as an adult after an adjudicatory hearing in juvenile court. Id. The same result follows if the juvenile were first prosecuted as an adult and then returned to the juvenile session. A juvenile finding of delinquency is equally foreclosed by double jeopardy.

The defendant presses an interpretation of the statute which conflicts with its very purpose: treating juvenile killers as adults. By any reasonable definition, the defendant is a serious juvenile offender having killed another person. The time to determine that seriousness is at the transfer hearing and the probable cause hearing. The contention that it should be made after a full trial and a lesser homicide conviction is fatuous.

Having requested the charge on manslaughter in the second degree, the conviction which he now seeks to avoid, the defendant should not profit from his own behavior in attempting to circumvent the law.

For this defendant, the lesser charge was a blessing, since the court believes it prevented a murder conviction. It was a justified charge. It deserves to be answered with an appropriate sentence in part A. Anything less disparages our system of justice. The court's internal reconciliation of two apparently conflicting statements in a statute complies with the expressed legislative intent and makes good sense. Courts should interpret statutes to achieve a workable, sensible law.

Our legislature, like the people of this state, has rejected the result proposed by the defendant. So must the court.

The defendant's motion is denied.