STATE OF CONNECTICUT *v.* RICHARD L. STALLINGS

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 11—decided November 29, 1966

*James D. Cosgrove,* public defender, for the appellant (defendant).

*John D. LaBelle,* state's attorney, with whom, on the brief, was *George D. Stoughton,* assistant state's attorney, and *Brandon J. Hickey,* special assistant state's attorney, for the appellee (state).

ALCORN, J. On the morning of April 27, 1964, Mrs. Ida Kantrowitz, a woman about seventy-eight years old, was found dead of strangulation in her apartment in Hartford. She was bound hand and foot, both eyes were blackened, her nose was crushed, a gag in her mouth had lacerated the root of her tongue, and her hyoid bone, or Adam's apple, and the laryngeal cartilage surrounding it were fractured. Mrs. Kantrowitz was last seen alive on her back porch about midnight on April 26, 1964. The defendant was arrested and presented in the Circuit Court on April 28, 1964, charged with murder in the first degree. The public defender was called as soon as the defendant was arrested and has acted as his counsel ever since. On April 28, 1964, the Circuit Court continued the case until May 27, 1964, and ordered the defendant held without bond. The defendant was committed to jail under a Circuit Court mittimus for the period of the continuance. On May 15, 1964, a bench warrant, charging the defendant with murder in the first degree, was issued by the Superior Court and served on him, and he did not appear further in the Circuit Court although his counsel was present, prepared for a hearing in probable cause, on May 27, the continuance date. On June 2, 1964, a grand jury was legally impaneled and sworn in the Superior Court to hear evidence on an indictment charging the defendant with the murder of Mrs. Kantrowitz. On June 3, 1964, the grand jury returned a true bill, and, on October 14, 1964, the defendant, before being

put to plea, filed a motion to quash or dismiss the indictment. The grounds of the motion were that (1) the defendant, after his arrest and presentation in the Circuit Court, was denied a hearing in probable cause in violation of General Statutes § 54-76a (later amended by Public Acts 1965, No. 321); (2) the grand jury heard evidence which would not have been admissible in the trial of the case and considered it in determining whether or not to return a true bill; and (3) the defendant was not permitted to have counsel with him in the grand jury room. The court denied the motion on October 22, 1964, and, on October 27, 1964, the defendant was put to plea, pleaded not guilty and elected trial by jury. On November 24, 1964, following a trial, the jury found the defendant guilty of murder in the first degree, and the court accepted the verdict. The defendant moved to set aside the verdict, and the court denied the motion. The case was then submitted to the jury on the issue of the penalty, and they found that the defendant should be sentenced to the state prison for life. General Statutes § 53-10. The court accepted the verdict, and, on December 1, 1964, judgment was rendered accordingly.

The defendant has appealed from the judgment, assigning error in the denial of the motion to quash or dismiss the indictment, in the denial of the motion to set aside the verdict, in the charge to the jury, and in a ruling on evidence. The court has made a finding of facts pertinent to the motion to dismiss or quash the indictment and a finding as to the claims of proof at the trial which we utilize to test the correctness of the charge. *Turner* v. *Scanlon*, 146 Conn. 149, 151, 148 A.2d 334. The errors assigned in the finding pertinent to the motion

to quash or dismiss the indictment raise only the legal issues involved in the action on that motion, and they are hereinafter considered. Error is also assigned in the court's refusal to find the facts stated in sixteen paragraphs of the draft finding relating to the trial of the case. Of these we consider only the two which are pursued in the brief. *Labbadia* v. *Bailey,* 152 Conn. 187, 190, 205 A.2d 377. The essential particulars of one of these paragraphs appear in the finding. The defendant seeks to have both paragraphs added to the state's claims of proof. "A party cannot compel his adversary to incorporate in his claims of proof factual matter upon which he does not rely." *Turner* v. *Scanlon,* supra. Moreover, the requested additions would not aid in the attack on the charge. Maltbie, Conn. App. Proc. § 160. No corrections can be made in the finding.

I

We consider first the denial of the motion to quash or dismiss the indictment. The first claim of the defendant is that he was denied a hearing in probable cause in violation of § 54-76a of the General Statutes. The short answer is that there was no violation of that statute. The section is entitled "Procedure at hearings in probable cause" and, as its title indicates, does no more than prescribe the procedure to be followed when a hearing in probable cause is held. Here no such hearing was held. The defendant digresses from the point of his motion, however, to argue that, because of another statute, namely § 54-1a, the Superior Court was impotent to remove the case from the jurisdiction of the Circuit Court. Section 54-1a defines the criminal jurisdiction of the Circuit Court, and the portion

relied upon by the defendant, taken out of context, provides that "[w]hen any complaint for any offense punishable by imprisonment for more than five years is legally brought before the court, it shall conduct a hearing in probable cause". The defendant argues in substance that that portion of the statute requires a hearing in probable cause in the Circuit Court, asserting claimed benefits to an accused person from such a procedure.

The argument misconstrues the purport of the quoted language. Section 54-1a first limits the criminal jurisdiction of the Circuit Court to offenses punishable by a fine of not more than $1000 or imprisonment for not more than one year or both. It then provides that, when a complaint is brought for an offense punishable by a fine of more than $1000 or imprisonment for more than one year but not more than five years, the court may, under specified circumstances, hold a hearing in probable cause and bind the offender over to a court having jurisdiction or take jurisdiction and impose no greater penalty than a $1000 fine or one year imprisonment or both. Finally, the section provides that, when a complaint is made for an offense punishable by imprisonment for more than five years, the court is required, by the language already quoted, to hold a hearing in probable cause and, if it finds probable cause, to bind the accused over to a court having jurisdiction. The clear meaning of § 54-1a is to fix the jurisdiction of the Circuit Court and delineate its powers in the three situations explicitly set forth. The quoted portion of the section is not to be construed as requiring a hearing in probable cause in the Circuit Court to the exclusion of other prescribed and time-honored procedures. The hearing in probable cause amounts only to an

inquest, the finding of probable cause is not final, and it cannot be used against the accused on the trial. *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608, 611 (2d Cir.).

The Superior Court, on the other hand, is a constitutional court of unlimited jurisdiction. Conn. Const. art. 5 § 1. It has sole jurisdiction of all offenses not within the jurisdiction of the Circuit Court and concurrent jurisdiction of those within the Circuit Court's jurisdiction. General Statutes § 54-17. An original information may be filed in the Superior Court in any case in which the Circuit Court may, at its discretion, punish or bind over for trial, and in any other case on the order of the Superior Court. § 54-42. The power of the state's attorney to file an original information is deeply rooted in the common law. *State* v. *Keena,* 64 Conn. 212, 215, 29 A. 470.

The defendant injects the argument that the Superior Court bench warrant which was issued in this case was invalid under our decision in *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900. While this claim forms no proper issue on the defendant's appeal, we notice it to the extent of pointing out that the *Licari* decision (p. 131 n.) strictly limited its application to circumstances not present in the case now before us. In the present case, the warrant was issued to bring before the Superior Court a person who was already under arrest and confined in jail.

The procedure which was followed in this case has been the practice in this state for a great many years and serves the desirable end of expediting the disposition of criminal cases to the mutual benefit of the defendant and the state. *State* v. *Hayes,* 127 Conn. 543, 581, 18 A.2d 895; *State* v. *Chin Lung,*

106 Conn. 701, 720, 139 A. 91. The filing of the original information in the Superior Court was not prohibited by any constitutional provision. *Dillard* v. *Bomar,* 342 F.2d 789 (6th Cir.) ; *United States ex rel. Cooper* v. *Reincke,* supra; *State* v. *Hayes,* supra. The service of the Superior Court bench warrant superseded the Circuit Court mittimus, under which the defendant was being held, and brought him under the jurisdiction of the Superior Court. *State* v. *Chin Lung,* supra.

## II

The next two issues raised by the defendant attempt an attack upon ancient and firmly established grand jury procedures. It was his effort to introduce, on the motion to quash or suppress the indictment, his own testimony that an inadmissible statement had been read to the grand jury. For the present purposes, we assume that inadmissible evidence was submitted to the grand jury. The assumption is necessary in order to consider the claim since the trial court properly refused to hear evidence concerning the proceedings before the grand jury. *State* v. *Hayes,* supra, 580.

It has been the law in this state for many years that an indictment will not be quashed because inadmissible evidence was presented to the grand jury. *State* v. *Wolcott,* 21 Conn. 272, 280; *State* v. *Fasset,* 16 Conn. 457, 471. In *Costello* v. *United States,* 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397, an indictment based entirely on hearsay was held not to violate the part of the fifth amendment to the constitution of the United States which provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Mr. Justice Black

aptly observed in the *Costello* case (p. 363) that if the law were otherwise "before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." In *State* v. *Kemp,* 126 Conn. 60, 71, 9 A.2d 63, there is dicta to the effect that, in considering a specific criminal charge against an individual, the grand jury "should no doubt restrict the evidence it elicits to that which is admissible in the trial of cases." And in the customary charge to the grand jury, they are, in substance, admonished to that effect.

It is, of course, desirable to elicit evidence which would be admissible in a trial court. No claim is made, however, that evidence of that sort was not elicited in this case. The complaint is only that some undisclosed quantum of inadmissible evidence was also heard. The grand jury, here and in England, has, for hundreds of years, convened as a body of laymen, free from technical rules and acting in secret. Their proceedings "are both 'ex parte' and interlocutory; moreover, the grand jury only seeks for a 'probable cause'; hence, on all principles, the jury-trial rules of Evidence should not apply. Moreover, in point of policy, no rules should hamper their inquiries, nor need a presentment amounting only to probable cause be based on a system of rigid sifting of evidence." 1 Wigmore, Evidence (3d Ed.) § 4, p. 21.

In the vast majority of other jurisdictions, an indictment will not be quashed because incompetent evidence was heard, so long as other competent evidence was also heard. See 27 Am. Jur. 717, Indictments and Informations, § 167; note, 1963 Wash. U.L.Q. 102, 112 & n.47. The 1930 American Law Institute, Code of Criminal Procedure § 138, states

the proposition as follows: "The grand jurors shall find an indictment only when they have received what they believe to be sufficient legal evidence, and in case of doubt they may ask the advice of the prosecuting attorney; but no indictment shall be quashed or judgment of conviction reversed on the ground that there was not sufficient legal evidence." See 1 Wigmore, op. cit. § 4, p. 23 n.8. A few states have purported, by statute, to limit the grand jury's consideration to legally admissible evidence. Professor Wigmore says these states were "moved by experiences and motives of public policy not easy to detect." 1 Wigmore, op. cit. § 4, p. 23. And in the states in which the issue has been considered, the courts have held the statute to be directory only. 27 Am. Jur. 716, Indictments and Informations, § 166; note, 1963 Wash. U.L.Q. 111, 112 & nn.; *State* v. *McDonald*, 231 Ore. 24, 34, 361 P.2d 1001; *Bircham* v. *Commonwealth*, 238 S.W.2d 1008, 1011 (Ky.); *People* v. *Hatch*, 13 Cal. App. 521, 528, 109 P. 1097.

The difficulties encountered in requiring the grand jury to determine what is admissible evidence were pointed out by this court over a hundred years ago. *State* v. *Fasset*, 16 Conn. 457, 472. What was said then is equally true today and, in part, has been echoed by Mr. Justice Black as quoted above. *Costello* v. *United States,* supra. The court did not err in refusing to quash or dismiss the indictment even if it is assumed that evidence not legally admissible on a trial was heard and considered. The grand jury does not hear evidence to determine guilt, and an indictment is not a determination of guilt. The defendant is fully protected against the reception of inadmissible evidence of his guilt in his trial before the petit jury.

## III

The defendant's third ground for quashing or dismissing the indictment is that he was not permitted to have counsel with him in the grand jury room while the evidence was being presented. A principal reason advanced for the presence of counsel is "so that he may object to improper evidence" on which "the foreman [of the grand jury] may get a court ruling almost immediately." In other words, he advocates the "kind of preliminary trial" of which Mr. Justice Black so pointedly disapproves.

The presence of defense counsel before the grand jury has never been the practice in this state. *Lung's Case,* 1 Conn. 428; *State* v. *Wolcott,* 21 Conn. 272, 279; see also *State* v. *Kemp,* 126 Conn. 60, 66, 9 A.2d 63. An accused person is entitled to counsel at all critical stages of the proceedings against him as, for example, a point at which matters such as pleas of insanity or in abatement and motions to quash must be advanced on pain of losing the opportunity to advance them. *Hamilton* v. *Alabama,* 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114.

Under our practice, proceedings before the grand jury are not such a critical stage. Until the grand jury should decide to return a true bill, the defendant could not be called upon to plead or be required to stand trial. Indeed, under Connecticut practice, he is not even required, although he is permitted, to be present in the grand jury room during the examination of witnesses; and in practice that right is almost invariably exercised, as it was in this case. *State* v. *Fasset,* supra, 469. Being present, the defendant was under no obligation to speak and could not offer witnesses or defenses in his behalf. Thus he need neither know of nor be able

to present any matter of defense. He could know all the evidence offered against him and question witnesses if he wished to do so. Not until the indictment was returned against him did he become the accused. From that time on the courts were open to him to move, as he did, to quash or dismiss the indictment for any claimed irregularity, to plead, to offer any proper defense, and to have his guilt or innocence of the charge determined in a jury trial, all with the advice and guidance of counsel. The defendant was, in effect, a spectator to the proceedings from which the grand jury had only to determine whether he should even be required to stand trial. Neither precedent nor the due administration of justice required that his counsel be present with him at those proceedings. The court did not err in denying the motion to quash or dismiss the indictment.

## IV

We turn then to the claim that the evidence is insufficient to support the verdict and that, therefore, the court erred in denying the motion to set it aside. This requires an examination of the evidence printed in the appendices to the briefs and such exhibits as are made a part of the record. *State v. Hodge,* 153 Conn. 564, 572, 219 A.2d 367; *State v. Davis,* 153 Conn. 228, 229, 215 A.2d 414. From this evidence the jury could have found the following facts:

The defendant, age twenty-one, lived in Hartford with his wife. In January, 1964, he visited Kansas City, Missouri, for two weeks and returned to Hartford in a Chevrolet automobile driven by Willie Jones in which Ray Reed, Denise Rogers and Barbara Harris (also known as Judy Sears) were

also passengers. After arriving in Hartford, Judy Sears, Willie Jones and Ray Reed went to live with the defendant and his wife, but after three weeks Reed moved to Springfield, Massachusetts. A girl named Roberta Milner lived in a second-floor apartment in a twelve-family apartment house known as 169-171 Westland Street. Mrs. Kantrowitz owned the house and lived in a first-floor apartment. Judy Sears occasionally stayed in Roberta Milner's apartment, and the defendant often visited there. He knew that the landlady was Mrs. Kantrowitz, and he knew which apartment Mrs. Kantrowitz occupied. The defendant was unemployed from January, 1964, until his arrest on April 27, 1964. In March, 1964, Willie Jones took the defendant and the latter's wife, in Jones' car, to a shop where the defendant's wife purchased a revolver. The revolver was the defendant's although the purchase was made by his wife because the defendant was not twenty-one years old at the time.

When Mrs. Kantrowitz' body was found on the morning of April 27, 1964, in the condition already described, her apartment was a shambles. Drawers were pulled out, the contents strewn about, boxes were emptied and pocketbooks lay on the kitchen table. There was a bullet hole in the wall of the bedroom near the bed on which Mrs. Kantrowitz was lying, and a bullet was found near this hole on the floor of the hall outside the apartment. Subsequent tests showed that the bullet had been fired from the defendant's revolver. The revolver was later found hidden under a mattress in the defendant's apartment.

All windows and doors of Mrs. Kantrowitz' apartment were locked except the front door, which had a skeleton key hanging from the lock. The kitchen

table was covered with a cloth, and a pocketbook was discovered by the police on the seat of a chair under the table. The pocketbook contained, among other things, $3835.15 in cash, checks totaling $15,803.94, a promissory note for $800, bonds totaling $700, a post office note for $5 and bankbooks showing small balances.

The defendant had gone fishing with Jones and Reed on Saturday, April 25, and they returned home about 3 a.m. on Sunday, April 26. They slept late, and, that evening, they went to a party on Love Lane in Hartford, a street near Westland Street. They left the party about 4 a.m. on April 27 and drove in Jones' car to 169 Westland Street. Jones went to the Milner apartment to get Judy Sears, who was asleep there. About 4:30 a.m. a Chevrolet automobile with Missouri license plates was seen parked in front of 169 Westland Street, with its motor running and its lights on. At Jones' request, Judy Sears dressed and left the Milner apartment with him. When they returned to Jones' car, the defendant and Reed were not in it. Jones and Judy Sears sat in the car in front of the apartment, and, while they were there, they heard a noise like a gunshot. About five or ten minutes later, the defendant and Reed came to the car and got in it. The defendant was carrying a revolver, which he placed under the dashboard of the car. He asked Jones if he had heard any noise. Jones replied that he had heard what sounded like a shot and asked the defendant if he had been shooting. The defendant said: "No, the gun went off." As the defendant got into the car he said to Jones: "Let's go." It was then beginning to be daylight, and all drove back to the party at Love Lane, where Jones, Reed and the defendant left the car. Jones and Reed

soon returned to the car, and they, with Judy Sears, drove to the defendant's apartment. Jones took the revolver from the car and hid it under a mattress in the defendant's bedroom in the apartment. Jones then took Reed to the bus station and has not seen him since. About 3:30 in the afternoon, the defendant returned to his apartment on foot, where he stayed until the police came for him on the evening of April 27, after they had investigated Mrs. Kantrowitz' apartment and had interviewed Judy Sears, Roberta Milner and Jones.

With such reasonable inferences as the jury were entitled to draw from the evidence, they could conclüde beyond a reasonable doubt that Mrs. Krantrowitz had been murdered in the course of the perpetration or attempted perpetration of a robbery or burglary (General Statutes § 53-9) and that the defendant, alone or in concert with another, was guilty of that crime. The court did not err in denying the motion to set aside the verdict.

## V

The defendant assigns error in one paragraph of the court's charge because "[t]he language of the charge was such that the jury could convict the defendant of murder in the first degree if it found that he had been an accessory to the crime of attempted robbery with violence." The paragraph attacked is the opening one of ten paragraphs of the charge dealing with the subject of an accessory. In that paragraph the court said: "If two or more persons participate in a crime they are equally responsible though it was the immediate act of only one which actually brought the crime about. Participation means not only actively sharing in its formal commission but in doing anything to aid, to

assist, to incite or to encourage the conduct which caused it." With this introduction, the court then went on to elaborate in paragraphs to which, understandably, no exception was taken. The claim of error in the charge is without merit.

## VI

Finally, the defendant assigns error in the court's excluding testimony on cross-examination of Willie Jones, who was a witness for the state. The defendant proposed to offer testimony as to statements allegedly made to Jones by Reed, whose whereabouts were conceded to be unknown, "which would indicate an awareness of responsibility in connection with this particular case." To avoid any possibility of improperly influencing the jury, the court, in its discretion, ruled against a disclosure of the exact nature of the statement. The defendant's claim of proof, however, was that the statement indicated that Reed alone had committed the murder, and we consider the issue accordingly. The court excluded the proffered testimony.

We have consistently refused, as a rule of policy which is followed in most jurisdictions, to allow testimony as to hearsay declarations of a third party that he, and not the accused, committed the crime charged against the accused. *State* v. *Mosca,* 90 Conn. 381, 387, 97 A. 340; *State* v. *Beaudet,* 53 Conn. 536, 551, 4 A. 237.

We see no occasion to depart from our established rule. There can be no denial of the necessity for allowing any reliable evidence tending to prove the innocence of a person accused of crime. But the exclusionary rule is based on the premise that such confessions or admissions do not afford a sufficient assurance of trustworthiness so that the safeguard

of cross-examination can safely be dispensed with. Indeed, this very case abundantly demonstrates the wisdom of the rule. Jones had been a friend of the defendant since 1958 or 1959. He had met Reed in 1961 or 1962. After coming to Hartford, he lived with the defendant through the whole period antecedent to this murder, but Reed had moved to Massachusetts. Jones had gone with the defendant to purchase a revolver. Following the events of the night and early morning of April 26–27, 1964, Jones had hidden the defendant's revolver, had delivered Reed at a bus station and had not seen him since. It was not until cross-examination by the defendant's counsel that the subject of a statement by Reed came up. We judicially notice the case of *State* v. *Reed,* Superior Court, Hartford County, No. 26749, to which our attention has been called. Less than a year after the jury verdict in the present case, and while this appeal was pending, Reed pleaded not guilty to an indictment charging him with the murder of Mrs. Kantrowitz and was tried and acquitted by a jury.

The court was correct in excluding the proffered evidence.

There is no error.

In this opinion the other judges concurred.