STATE OF CONNECTICUT *v.* WILLIAM H. STEPNEY, JR.

STATE OF CONNECTICUT *v.* DANIEL VINAL, JR.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued March 7—decision released June 24, 1980

*Anne C. Dranginis,* assistant state's attorney, with whom were *Richard L. Shiffrin,* assistant state's attorney, and, on the brief, *Dennis A. Santore,* state's attorney, for the state in each case.

*James A. Wade,* with whom were *Timothy F. Bannon* and *Louis Erteschik,* for the defendant in the first case.

*Joseph J. Gallicchio,* for the defendant in the second case.

COTTER, C. J. The defendants Daniel Vinal, Jr., and William H. Stepney, Jr., were presented before two different grand juries for Litchfield County separately impanelled in February and August, 1979 respectively on separate indictments charging each of them with murder in violation of § 53a-54a (a) of the General Statutes. Prior to the examination of witnesses, the courts instructed each of the grand juries that intent to cause the death of the victim was an element of the crime charged in the indictment and that "ordinarily a person is presumed to

intend the result which follows his acts."[1]  After reviewing the evidence and interviewing witnesses, each grand jury returned a true bill.

Although neither of the defendants filed a motion to dismiss the indictments, in response to a joint motion by the defendant and the state in each case, both cases were reserved[2] to this court, and later consolidated, to determine whether the instructions given to each grand jury on the issue of intent were

[1] The instructions in each of the cases, which were identical in all material aspects, pertinent to the issue of intent delivered by the court were as follows:

"A person is guilty of murder when with intent to cause the death of another person he causes the death of such person, or of a third person.

"A person acts intentionally with respect to a result or the conduct described by the statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Concerning intent, I ought to say that ordinarily a person is presumed to intend the result which follows his acts, and from that, it comes about that if you find a homicide has been committed, under such circumstances that the law does not justify it or excuse it, as I have explained it to you, then you are at liberty to fall back on this presumption that a person intends the results produced.

"To state it more briefly in the absence of facts justifying or excusing a homicide, you are at liberty to and should assume for your purposes that intent was present and the crime was murder.

"In your consideration of the question of intent it is proper that you should, if you see fit to do so, infer that there was intent from the use of a deadly and dangerous weapon, or when a homicide is especially wanton or atrocious, that there must be intent to bring it about in that way.

"If you come to the conclusion that there is a reasonable ground to believe that a homicide has been committed which has in it the factor of intent, then it means you have come to the conclusion that there is a reasonable ground to believe that a murder has been committed."

[2] We need answer only the first question reserved for our advice:

"1. Does the jury charge given to the Grand Jury by the Superior Court for Litchfield County in the above entitled action regarding the intent factor in the crime of murder contained in the stipulation of facts annexed hereto meet the due process requirements of the Fourteenth Amendment to the United States Constitution?"

constitutionally defective in light of the recent United States Supreme Court decision in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39. The sole issue presented in this appeal is whether the prohibitions enunciated in *Sandstrom* v. *Montana,* supra, regarding instructions delivered to a petit jury on the issue of criminal intent are applicable in a grand jury proceeding. For the reasons more fully stated herein, we conclude that the interests intended to be protected by the prohibitions delineated in *Sandstrom* with regard to a petit jury are not equally imperiled within the context of a grand jury proceeding as conducted in this state and therefore answer the question reserved for our advice in the affirmative.

I

In this state, a grand jury indictment is required to commence a criminal prosecution only in cases where the offense charged is punishable by death or life imprisonment. Conn. Const., art. I § 8. General Statutes § 54-45 provides in pertinent part: "The superior court may, when necessary, order a grand jury of eighteen electors of the judicial district where said court is sitting to be summoned, impaneled and sworn to inquire after and present such offenses as are cognizable by said court. . . . No person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn, and no bill shall be presented by any grand jury unless at least twelve of the jurors agree to it." See *Alexander* v. *Louisiana,* 405 U.S. 625, 633, 92 S. Ct. 1221, 31 L. Ed. 2d 536; *Hurtado* v. *California,* 110 U.S. 516,

534, 4 S. Ct. 111, 28 L. Ed. 232; *State* v. *Cobbs,* 164 Conn. 402, 407, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112; *Kennedy* v. *Walker,* 135 Conn. 262, 272, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715, reh. denied, 337 U.S. 934, 69 S. Ct. 1493, 93 L. Ed. 1740. The purpose underlying the constitutional requirement of an indictment is "to prevent the harassment and suffering of an innocent person by compelling him to appear in court to respond to malicious or unfounded charges." *Kennedy* v. *Walker,* supra, 270. The purpose is achieved by interposing, between the state and the accused, a body of eighteen disinterested persons, although the agreement of only twelve of them is needed to return a true bill. General Statutes § 54-45; *Cobbs* v. *Robinson,* 528 F.2d 1331, 1338 (2d Cir.), cert. denied, 424 U.S. 947, 96 S. Ct. 1419, 47 L. Ed. 2d 354; *State* v. *Menillo,* 159 Conn. 264, 275, 268 A.2d 667. Unlike a petit jury, a grand jury does not determine the truth of the charges contained in the indictment. The role of the grand jury, rather, is only to determine whether there is probable cause to believe the charges against the defendant require him to stand trial; it is not a trial body and does not determine the guilt or innocence of persons accused of crime. *Branzburg* v. *Hayes,* 408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626; *State* v. *Menillo,* supra. Accord, *Wood* v. *Georgia,* 370 U.S. 375, 390, 82 S. Ct. 1364, 8 L. Ed. 2d 569. A failure to return a true bill does not foreclose prosecution of the defendant since, for the same conduct, he may be prosecuted for a lesser offense without the necessity of an indictment. *State* v. *Menillo,* supra.

Under Connecticut practice, which was followed in the present cases, the state's attorney lays a bill

of indictment for murder before the Superior Court which then orders a grand jury to be summoned to consider that indictment. General Statutes § 54-45; Practice Book, 1978, § 605. The state's attorney submits a list of witnesses to the grand jury which may summon, for interrogation, the witnesses on that list together with any other witnesses whose testimony the grand jury may desire; Practice Book, 1978, § 614; and all witnesses before the grand jury are sworn to speak the truth. Practice Book, 1978, § 610. Any of the grand jurors may question a witness called to testify and that inquiry is not confined to the technical rules of evidence since the grand jury only seeks for probable cause and rules of evidence should not apply. *State* v. *Stallings,* 154 Conn. 272, 280, 224 A.2d 718; Practice Book, 1978, § 611. See *Costello* v. *United States,* 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397. During the examination of witnesses by the grand jury, neither the court, the state's attorney nor an attorney representing the accused may be present in the grand jury room. Practice Book, 1978, § 609; *State* v. *Piskorski,* 177 Conn. 677, 719-20, 419 A.2d 866; *State* v. *Menillo,* supra. Within the discretion of the judicial authority, however, the accused is permitted, albeit not required, to be present, and in these cases the defendants were present in the grand jury room during the examination of witnesses although no one is permitted in the grand jury room during the grand jury's deliberations. Practice Book, 1978, § 609. See, e.g., *State* v. *Menillo,* supra. The accused is under no obligation to speak, and, since the "grand jury does not determine guilt or innocence but merely determines whether there is probable cause to justify putting the accused on trial for murder, the accused,

although allowed to ask proper questions of the witnesses before the grand jury, is not allowed to testify or to introduce evidence tending to prove his innocence." *State* v. *Menillo,* supra, 274; *Cobbs* v. *Robinson,* supra. Not being able to present any defense to the charges in the indictment, the defendant is "in effect, a spectator to the proceedings from which the grand jury had only to determine whether he should even be required to stand trial." *State* v. *Stallings,* supra, 283.

## II

In *Sandstrom,* the United States Supreme Court held that the instruction delivered to the petit jury, which of course involved a trial and not an indictment proceeding, that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the defendant's constitutional right to due process under the fourteenth amendment. Given the common definition of the term "presume" and the lack of qualifying instructions as to the legal effect of the presumption, the court found an infringement of the defendant's constitutional rights because the jury could reasonably have interpreted the presumption in either of two ways both of which are constitutionally impermissible because their effect is to relieve the state of its burden of proof on the element of intent.[3] *Sandstrom* v. *Montana,* supra, 517. See also *State* v.

---

[3] In *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39, the state of Montana offered two interpretations of the presumption on intent which it contended upheld the constitutionality of the presumption. First, the state argued that the presumption merely described a permissive inference which did not require, but merely allowed the jury to draw conclusions about the defendant's intent. The court rejected this characterization of the presumption. The absence of instructions indicating that the jury had a choice or that they might infer that the conduct of the defendant

*Arroyo,* 180 Conn. 171, 429 A.2d 457; *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111. First, the presumption could have been interpreted by the jury as conclusive, i.e., an irrebutable direction by the court to find intent once the underlying facts are established. Such a presumption would be constitutionally infirm because it would " 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] fact-finding function' which in a criminal case the law assigns solely to the jury." *Sandstrom* v. *Montana,* supra, 523. See also *United States* v. *United States Gypsum,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854; *Morissette* v. *United States,* 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288; *State* v. *Arroyo,* supra; *State* v. *Harrison,* supra.

Even if it were not seen as conclusive, the presumption may have been interpreted by the jury as shifting the burden to the defendant, once evidence is admitted establishing his conduct, to prove that he lacked the requisite mental state. It had been firmly established, however, that a presumption with such an effect deprives a defendant of his

was accompanied by the requisite intent raised the possibility that a reasonable juror could have viewed the presumption as mandatory.

Secondly, the state argued that the presumption, even if viewed as a mandatory one, was not conclusive under state law but could be rebutted by the defendant with "some" evidence thereby shifting to the defendant only a burden of production rather than the burden of persuasion on the element of intent. The court also rejected this characterization of the presumption without determining its constitutionality. Recognizing the authority of the state Supreme Court in determining, under state law, the legal weight to be accorded a presumption, the court nonetheless stated that "a reasonable juror could well have been misled by the instruction given, and could have believed that the presumption was not limited to requiring the defendant to satisfy only a burden of production." Id., 517.

right to due process of law which places the burden on the state to prove the existence of every element of the crime beyond a reasonable doubt. *Patterson v. New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281; *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508. Even if we assume, arguendo, that the instructions given in the present case would have been prohibited by the rule enunciated in *Sandstrom* had they been delivered to a petit jury,[4] the issue remains whether the defendants' constitutional rights have been violated when those instructions were given to the grand jury that returned a true bill of indictment against them.

### III

"Although the due process clause guarantees the defendant a fair trial, 'it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury.' *Alexander* v. *Louisiana,* 405 U.S. 625, 633, 92 S. Ct. 1221, 31 L. Ed. 2d 536. 'Once the State chooses to provide grand . . . juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria.' *Carter* v. *Jury Commission,* 396 U.S. 320, 330, 90 S. Ct. 518, 24 L. Ed. 2d 549." *State* v. *Cobbs,* supra, 407; *Cobbs* v. *Robinson,* supra, 1334. Due to the limited function of the grand jury and the nature of the consequences of an indictment, however, there has been a reluctance to make applicable in a grand jury proceeding all

---

[4] In *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457, this court recognized that *"Sandstrom* does not invalidate the use of all inferences and presumptions with regard to criminal intent." Viewing the charge as a whole, there would be no constitutional infirmity if it were made clear to the jury, inter alia, that they were permitted but not required to infer criminal intent from the defendant's conduct. *State* v. *Arroyo,* supra, 175, and cases cited therein.

of those constitutional principles that have been recognized to be applicable in a criminal trial before the court or a petit jury.

In a series of decisions by the United States Supreme Court, it has been unequivocally established that the validity of an indictment is not affected by the character of the evidence considered by the grand jury and "that an indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment."[5] *Lawn* v. *United States,* 355 U.S. 339, 349, 78 S. Ct. 311, 2 L. Ed. 2d 321. In *Holt* v. *United States,* 218 U.S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, the court held that an indictment should not be quashed because it was supported in part by incompetent evidence. Later, in *Costello* v. *United States,* 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397, the court went further and held that an indictment, returned by a legally constituted and unbiased grand jury,[6] was valid even though all of the evidence before the grand jury was in the nature of hearsay. See also *State* v. *Stallings,* supra. The

[5] In discussing the sufficiency of accusation required for a facially valid indictment, the United States Supreme Court, in *Hamling* v. *United States,* 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590, stated: "Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Id., 117.

[6] It has been firmly established that a defendant may challenge the validity of an indictment on the ground that the system for the selection of the grand jury was discriminatory. *Rose* v. *Mitchell,* 443 U.S. 545, 99 S. Ct. 2993, 61 L. Ed. 2d 739; *Alexander* v. *Louisiana,* 405 U.S. 625, 92 S. Ct. 1221, 31 L. Ed. 2d 536; *State* v. *Carr,* 172 Conn. 608, 376 A.2d 74; *State* v. *Cobbs,* 164 Conn. 402, 324 A.2d 234.

rationale of the holding in *Costello* was stated thusly: "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment." Id., 363.

In *United States* v. *Blue,* 384 U.S. 251, 86 S. Ct. 1416, 16 L. Ed. 2d 510, the court held that even assuming that the indictment was based on evidence acquired in violation of the fifth amendment, dismissal of the indictment was not required.[7] "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether." Id., 255. The court stated that the defendant "would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial." (Footnote omitted.) Id. Nor can the fourth amendment be invoked as a basis for dismissing an indictment since it is not applicable to grand jury proceedings. In *United States* v. *Calandra,* 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561, the court held that the

---

[7] See also *Lawn* v. *United States,* 355 U.S. 339, 349, 78 S. Ct. 311, 2 L. Ed. 2d 321, where the court held that the defendants did not possess any constitutional right to have a "full dress hearing" to determine whether the grand jury which indicted them had relied on evidence acquired in violation of their fifth amendment rights. Cf. *United States* v. *Mandujano,* 425 U.S. 564, 96 S. Ct. 1768, 48 L. Ed. 2d 212 (although *Miranda* warnings are not required for a witness before a grand jury, he may refuse to answer a question on the ground that the answer would be self-incriminating in violation of the fifth amendment to the federal constitution).

exclusionary rule of the fourth amendment does not limit the grand jury's power to compel a witness to answer questions predicated on evidence obtained as a result of an unlawful search or seizure.[8] Weighing the potential injury to the role of the grand jury against the potential benefits of applying the exclusionary rule to a grand jury proceeding,[9] the court concluded that "allowing a grand jury witness to invoke the exclusionary rule would unduly interfere with the effective and expeditious discharge of the grand jury's duties." Id., 350.

Similarly, on the rationale that a grand jury proceeding is not a "critical stage" of the prosecution, it has been established that an accused has no constitutional right to have an attorney present in the grand jury room during the examination of witnesses; *United States* v. *Mandujano*, 425 U.S. 564, 581, 96 S. Ct. 1768, 48 L. Ed. 2d 212; *State* v. *Piskor-*

[8] See also *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54; *Frisbie* v. *Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541. Reaffirming the rule that an illegal arrest or detention does not void a subsequent conviction, the court, in *Gerstein*, held (p. 114) that the fourth amendment "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest" which is not, however, required where an indictment is returned against the defendant. As the court explained, "[t]he willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution." Id., 117 n.19.

[9] In *United States* v. *Calandra*, 414 U.S. 338, 349, 94 S. Ct. 613, 38 L. Ed. 2d 561, the court stated further: "Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings." Cf. *Gelbard* v. *United States*, 408 U.S. 41, 60, 92 S. Ct. 2357, 33 L. Ed. 2d 179.

*ski*, supra; *State* v. *Villafane*, 171 Conn. 644, 660, 372 A.2d 82, cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558; *State* v. *Stallings*, supra; nor is there any constitutional requirement that a defendant be afforded a transcript of the grand jury proceeding.[10] *State* v. *Piskorski*, supra; *State* v. *Moynahan*, 164 Conn. 560, 592, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219; *State* v. *Delgado*, 161 Conn. 536, 539, 290 A.2d 338. Cf. *Chesney* v. *Robinson*, 403 F. Sup. 306 (D. Conn.), aff'd, 538 F.2d 308, cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147. It is evident thus that because of the unique nature and function of the grand jury as solely an accusatory body, the plethora of constitutional protections generally deemed necessary at trial are not required in the context of a grand jury proceeding. With this background, we consider the question presented in this appeal.

## IV

As discussed previously, the instruction to a petit jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" was deemed, in *Sandstrom*, constitutionally impermissible insofar as the jury could have interpreted the presumption either as shifting the burden to the defendant to prove an absence of intent or as conclusively establishing the element of intent. In each of the grand jury proceedings in these cases, the grand jurors were instructed that the accused was not permitted to testify before them or to present evidence in his defense. Aware of the limitations on the accused's participation in the proceed-

---

[10] The legislature recently enacted Public Acts 1978, No. 78-289, § 1, codified in General Statutes § 54-45a, which requires that a transcript of grand jury proceedings, excluding deliberations, be made and access thereto made available to the accused.

ing, and that the proceeding was not a trial, the grand jurors could not reasonably have interpreted the presumption as shifting a burden of proof to the accused knowing, as they did, that they were not permitted to do anything to meet any such burden.[11]

Alternatively, even assuming arguendo that the grand jurors could have given the presumption conclusive effect, this would not necessarily invalidate the indictment for, as the court recognized in *Sandstrom*, where these kinds of presumptions are constitutional, the instruction can be adjudged valid.[12] In *Sandstrom*, a conclusive presumption, in the context of a criminal trial, was determined to be unconstitutional for two reasons: (1) a conclusive presumption conflicts with the overriding presumption

---

[11] It is not entirely accurate to state that either party has the burden of proof in a grand jury proceeding. The defendant is not permitted to present evidence to the grand jury. The state also does not, in a strict sense, present evidence to the grand jury but, as indicated previously, merely submits a list of witnesses whom the grand jury may wish to question. The grand jury, unlike a petit jury, is not, however, limited to the witnesses suggested by the state but possesses independent investigative authority and may question anyone it desires. Also, whereas a petit jury would be limited to the evidence introduced and testimony elicited from a witness by the attorneys or the court, in a grand jury proceeding, the jurors themselves may ask questions of the witnesses. Rather than considering whether any party has met its burden, the grand jury must make its own independent determination whether a true bill should be returned.

[12] After conceding the possibility that a juror may have interpreted the instruction in a permissible fashion, the court nonetheless concluded that "the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid." (Footnote omitted.) *Sandstrom* v. *Montana*, 442 U.S. 510, 519, 99 S. Ct. 2450, 61 L. Ed. 2d 39.

of the defendant's innocence; and (2) a conclusive presumption invades the factfinding function of the petit jury.

Considering first the effect of the challenged instructions on the presumption of innocence, it has been established that "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States,* 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481. Shortly before *Sandstrom* was decided, the court described the presumption of innocence as "a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial." *Bell* v. *Wolfish,* 441 U.S. 520, 533, 99 S. Ct. 1861, 60 L. Ed. 2d 447. In *Bell,* however, the court concluded that the presumption of innocence applies only at trial and could not form the basis of a challenge, on due process grounds, to the conditions of confinement for pretrial detainees.[13] Similarly,

---

[13] In *Bell* v. *Wolfish,* 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447, pretrial detainees in a New York correctional center challenged the legality of the conditions of their confinement. The Court of Appeals for the Second Circuit relied on the presumption of innocence as the basis for finding the detainees' due process right to be free from conditions of confinement not justified by compelling necessity. Rejecting that reasoning, the court stated that "[w]ithout question, the presumption of innocence plays an important role in our criminal justice system. . . . But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." Id., 533. Cf. *Stack* v. *Boyle,* 342 U.S. 1, 4, 72 S. Ct. 1, 96 L. Ed. 3.

since the conflict with the presumption of innocence sought to be avoided in *Sandstrom* does not exist in a grand jury proceeding, the presumption of innocence cannot form the basis of the defendant's challenge to the instructions to the grand jury on the legal presumption of criminal intent.

A conviction by a petit jury is, in effect, a determination that the state has presented sufficient evidence to rebut the presumption of the defendant's innocence as to each element of the crime charged. The conflict in *Sandstrom* arises from the fact that a conclusive presumption that the defendant possessed the requisite intent similarly rebuts the presumption of the defendant's innocence as to the element of intent. Both the presumption of innocence and the conclusive presumption of intent, therefore, cannot coexist since the existence of the latter negates the former. Such a conflict does not exist, however, in a grand jury setting inasmuch as an indictment is not a determination of guilt or innocence and therefore does not rebut or accept the presumption of the defendant's innocence. Following the return of a true bill of indictment, the defendant is presumed innocent until proven otherwise at trial where he is afforded the full panoply of constitutional, statutory and legal rights.

Nor can we say that a conclusive presumption impermissibly invades the factfinding function of the grand jury. Unlike a petit jury, whose function is to determine the truth of the facts presented at trial, the grand jury determines only whether there is probable cause[14] to believe the facts contained in

___

[14] "Probable cause exists where 'the facts and circumstances within [the grand jury's] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant

the indictment. "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879. See *Zurcher* v. *Stanford Daily,* 436 U.S. 547, 98 S. Ct. 1970, 56 L. Ed. 2d 525. The consequences of such a presumption in a grand jury proceeding are markedly different from those in a criminal trial and hence the protections enunciated in *Sandstrom* are not required in a proceeding of this nature.

The first question is answered in the affirmative. A second question also reserved requires no answer.

In this opinion the other judges concurred.

a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll* v. *United States,* 267 U.S. 132, 162 [45 S. Ct. 280, 69 L. Ed. 543]." (Footnotes omitted.) *Draper* v. *United States,* 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327.